## McEvoy vs. Loyd.

REAL PROPERTY.  *Deed of conveyance of one-half of government subdivision. Adverse possession under the statute.*

1. A conveyance of the east half of a certain quarter-quarter section of land, " containing twenty acres according to the government survey," conveys the whole of the described subdivision as determined by the monuments established by the original survey, *whatever may be the actual quantity of land therein.*
2. Possession and occupation of land for ten years under claim of title, exclusive of any other right, founding such claim upon a written in-

strument as being a conveyance of the premises, constitutes an adverse possession under secs. 6 and 7, ch. 138, R. S., only where the land so occupied and possessed is *in fact the same land* (or part thereof) *described in the instrument* upon which such claim is founded.

APPEAL from the Circuit Court for *Fond du Lac* County. Ejectment, for " a strip of land three rods and one foot wide and forty rods long, upon the north side of the east half of the southwest quarter of the northwest quarter of section five in a certain town in said county. " Plaintiff showed : 1. A patent from the United States, in 1848, to one Barden, of the west half of the northwest quarter of said section, which is also described in the patent as " eighty-one and 54–100 acres of land." 2. A warranty deed from Barden to plaintiff, in October, 1855, of the southwest quarter of the northwest quarter of said section. Defendant showed : 1. A warranty deed from plaintiff and wife to Sumner Sweet and Moses Sweet, in December, 1852 (?) of the east half of the northwest quarter of northwest quarter of said section, the tract conveyed being further described as " containing twenty acres according to the government survey. " 2. A warranty deed from Sumner Sweet and wife and Moses Sweet to Thomas Lord (the husband of the defendant), in June, 1860, of the northeast quarter, and the east half of the northwest quarter, of the northwest quarter of said section five ; the premises conveyed being further described as " containing sixty acres of land according to the public survey. "

It appeared from the testimony that plaintiff had resided since 1855 on the southwest quarter of the northwest quarter of said section 5 ; that in 1866 he built a fence to enclose his land on the north, and that this fence ran along the north side of the strip here in dispute ; that defendant, after her husband's death, continued to live upon the premises conveyed to her husband by the Sweets, as above stated ; that in 1868, one De Vry, who was county surveyor, had run the line between the northwest and southwest quarters of the northwest quarter of section five, and had fixed stakes by the aid of and in accordance with the origi-

nal field notes of the government survey; that *Mrs. Loyd* had built a new fence upon the line thus run, and had taken possession of the strip in dispute, and continued to occupy it at the time when this action was brought. It also appeared that the east half of the northwest quarter of the northwest quarter of the section contained over twenty acres, and Mr. De Vry testifies that "the section overran from north to south, and not from east to west."

The record states that, at the conclusion of the evidence, "it was agreed, as the law of the case, that any surplus of land in said section in dividing the same would be left upon the north and west sides of the section."

The court found for the plaintiff, and rendered judgment in his favor; from which the defendant appealed.

*D. W. C. Priest*, for appellant, to the point that the words " containing twenty acres," in plaintiff's deed to the Sweets, are mere surplusage, and that title passed by said deed to all the land included in the east half of the quarter-quarter section therein described, as determined by the government survey, cited 5 Cow., 371, 473; 1 id., 276, 286, 613; 1 Caines, 499; 2 Johns., 37; 15 id., 471; 18 id., 81; 2 Mass., 380; 6 id., 131; 11 id., 193. 2. To the point that to enable plaintiff to avail himself of his alleged adverse possession for ten years of the strip in dispute, his deed, by its terms, must include the premises, he cited 1 Cow., 286; 22 N. Y., 170; 24 Wis., 326; 3 Duer, 35; 16 Johns., 301; 21 Cal., 455.

*Coleman & Thorp*, for respondent:

The plaintiff having been in the occupancy and possession of the land in question, under the deed from Barden to him, since 1856, and the same having been protected by a fence, he held it adversely. R. S., chap. 138, secs. 6, 7, 9, 10; *Stevens v. Brooks*, 24 Wis., 326; *Buck v. Squiers*, 23 Vt., 498; *Poignard v. Smith*, 6 Pick., 172; *Hale v. Glidden*, 10 N. H., 397. His occupancy being open and notorious for more than ten years, it makes no difference whether the land was without or within

the boundaries contained in his deed from Barden. *Hale v. Glidden, supra; McKinny v. Kenny,* 1 A. K. Marsh., 460; *Crary v. Goodman,* 22 N. Y., 170.

COLE, J.   We are unable to concur in the conclusion reached by the court below, that the plaintiff was the owner in fee, and lawfully entitled to the possession, of the strip of land in controversy.   By the deed which he executed to Sumner and Moses Sweet, he conveyed the east half of the northwest quarter of the northwest quarter of section five, etc., further describing the land as " *containing twenty acres, according to the government survey.*"   We do not understand that there is any difficulty whatever in finding the land according to the government survey, or in ascertaining the proper boundaries.   But because this subdivision amounts to more than twenty acres, the plaintiff insists that he can claim the excess because he owns the forty-acre tract south, or in other words, because he only conveyed twenty acres by this deed.   This position is untenable.   Wherever land is conveyed according to the government description, and the monuments established by the original surveys can be found, these are controlling.   *Jones v. Kimble,* 19 Wis., 429; *Martin v. Carlin,* id., 454; also see *Prentice v. Brewer,* 17 Wis., 635.   It is not uncommon for these subdivisions to exceed or fall short of the requisite number of acres.   But the government description and monuments established by the surveys are to be regarded, rather than the number of acres which are mentioned in the deed.   Therefore the language in this conveyance, " containing twenty acres according to the government survey," does not limit the quantity conveyed, providing there were more in this subdivision than that amount.   For it was the manifest intention of the parties to convey according to the government survey; and if there had happened to have been a deficiency in this subdivision, the plaintiff would not have been required to make the quantity conveyed " twenty acres."

But the plaintiff further insists that he has been in the occu-

pancy and adverse possession of the strip in question for more than ten years under the deed from Barden to him, and therefore that he has now the right to hold it as against the defendant, by virtue of sections 6 and 7, chap. 138, R. S. The sections referred to in substance enact, that when a person enters into the possession of any premises under a claim of title exclusive of any other right, founding such claim upon some written instrument as being a conveyance of the premises in question, and continues in the " occupation and possession of the *premises included in such instrument*," under such claim, for ten years, " *the premises so included shall be deemed to have been held adversely.*"

The deed, however, from Barden to the plaintiff, which was offered in evidence, does not "include" this strip nor profess to. That is a conveyance of the southwest quarter of the northwest quarter of section five, an entirely different tract of land. It will be seen that this provision makes the ten years adverse possession of the premises included in the instrument, a bar to an action. Suppose, for example, a person having a conveyance of lot one, takes possession of lot two, thinking it to be his lot, and continues in the possession for ten years; can he claim the protection of this provision? The statute contemplates the case where a person enters into possession under a claim of title exclusive of any other right, founding such claim upon some written instrument as being a conveyance of the premises, and continues in the " occupation and possession of the *premises included in such instrument*,"— not in the possession of premises to which the instrument does not profess to relate. This ten years statute obviously refers to possession of premises under a written instrument which purports to be a conveyance of the land that the party has occupation and possession of. But where there is an actual continued occupation of premises under a claim of title exclusive of any other right, not founded upon any written instrument, there the premises must be occupied adversely for *twenty* years to bar a recovery. We therefore

think there could not be any adverse possession of this strip of land within the meaning of section six above cited, inasmuch as the Barden deed did not purport to include it. That deed conveyed other lands.

It is said by counsel for the plaintiff, that, as the occupancy of this strip of land by the plaintiff was open and notorious for more than ten years, it makes no kind of difference whether the land thus occupied was within the boundaries contained in his deed from Barden or not. But we do not so understand the statute. The statute, as plainly as language well can express the intention, contemplates that the premises, or some part of such premises, shall be included in the instrument under which the claim of title is made.

We see nothing in the cases to which we were referred by the counsel for the plaintiff, in conflict with these views. Upon the general principle that a deed cannot operate as color of title so as to have effect beyond the estate which it professes to pass, see *McRae v. Williams*, 7 Jones' Law (N. C.), 430; *Crary v. Goodman*, 22 N. Y., 170, and cases referred to in the opinion of Judge SELDEN.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.