## J. B. Hobson v. L. J. Dutton.

1. Tax Deed; *Recitals.* The deed made in pursuance of a sale had under section 70, page 873, of Comp. Laws,* need not recite that the treasurer unavoidably omitted or failed to sell in May.

2. ———— *Form of; Statute.* Where the statute prescribes the form of an instrument, a compliance with that form is sufficient.

3. ———— *Findings of Court; Recital of Sale.* Where a tax deed recites a sale of a certain tract of land, and it does not appear that the taxes thereon were paid, if the district court finds that a sale was made, that finding will not be disturbed in this court, even though this tract be not found in the sale-books for that year.

4. ———— *Evidence of Sale.* The recital in a tax deed of a sale is *prima facie* evidence that one was made.

5. Lands not Taxable in 1858. Lands the title to which did not pass from the government until October 1st 1858, were not subject to taxation for that year. And a sale of such lands for those taxes is void.

6. Void Tax; *Subsequent Taxes.* An attempt to charge up subsequent taxes to such a sale is inoperative, and the land remains liable to sale for non-payment of such subsequent taxes.

*Error from Miami District Court.*

Ejectment, brought by *Hobson*, to recover the possession of a quarter-section of land in Miami county. The petition stated that the plaintiff was the legal owner, in fee simple, and had the absolute title and right of possession, etc. *Dutton* answered, admitting possession, and setting up title and right of possession in himself under a tax deed dated May 20th 1864† upon a sale of said lands on the 2d of September 1862 for the non-payment of taxes assessed thereon for the year 1861. The tax deed being recorded September 19th 1864, the defendant further pleaded the statute of limita-

[*Said §70, Comp. Laws, 873, was re-enacted in the Tax Law of 1866, (§94, p. 285, Laws of 1866, except that the sale, if not held in May, was to be held on the first Tuesday of July; and in the present Tax Law, (ch. 107, Gen. Stat. 1868, p. 1050,) it stands as §99, and provides that if the sale does not take place in May it shall be held "on the fourth Monday of June next ensuing."]

[†Section 50 of the Tax Law of 1860, (Comp. Laws, 869,) was amended by act March 6, 1862, (Comp. Laws, p. 876, §7,) so as to limit the time of redemption from tax sales to *two* years from the day of sale. This act was in force until repealed and supplied by the Tax Law of 1866, (ch. 118, Laws of 1866, §§86, 117.) Under the Tax Acts of 1860, §50, 1866, §86, and 1868, §100, the time for redemption from tax sale is fixed at *three* years.]

tions. The action was tried at the November Term 1871. The plaintiff showed title in himself by regular conveyances from the original entry; and from this evidence it appears that the land was entered October 1st 1858. The defendant gave in evidence the tax deed set up in his answer. The plaintiff in rebuttal called the county treasurer, who produced the tax-sales books of his office, and from them it appeared that the land in controversy "was not sold in 1862, for the delinquent taxes of 1861. There was no entry on the duplicate or original sales-book for that year of a sale of that land. These books show that the land was sold in September 1859 for the taxes of 1858, and that the subsequent taxes were charged up against it." In explanation of said sales-books the parties then stipulated as follows:

"It is agreed that this tract of land is in the list of lands sold in September 1859 for the taxes of 1858, but in the list, and under the head of 'Amount of Taxes,' there is no entry of amounts of taxes for the years 1858, 1859, and 1860, but there is an entry of the amount of taxes for the year 1861, as shown by the tax-sale books produced in court by the said county treasurer, and that the taxes on said land for the year 1861, amounting to $8.41, were charged up to said land on said tax-sale books for the year 1858. And it is further agreed, that said tax-sale books do show a sale of various tracts of land in said county in 1862 for the delinquent taxes of 1861, but no sale of the land in question in this action in in 1862 for the taxes of 1861."

On the part of the plaintiff it was also shown that the land in controversy "was at the time of the commencement of this action unoccupied, and was wild, uncultivated land, and no one was residing thereon." The plaintiff also gave in evidence a certain paper as follows:

"*County Clerk's Office, Lykins County, K. T.*
"Received of Richard Mendenhall, for J. D. Pretlow, $10.33 in full for redemption of the N.W.¼ of S. 31, T. 17, R. 23, sold for taxes of 1858.
"E. W. ROBINSON, *County Clerk.*"

The land described in said paper is the land in controversy. The court made a general finding, "that the several allega-

tions contained in the defendant's answer are true; that defendant *Dutton* is the owner, and has the legal title and right to the possession of the premises described in plaintiff's petition," and gave judgment in favor of the defendant and against the plaintiff. *Hobson* brings the case here on error for review.

*B. F. Simpson*, for plaintiff in error:

1. The court below erred in admitting the tax deed in evidence, against the objection of plaintiff in error, for the reason, that the tax deed is void on its face, because the county treasurer was not authorized to sell said land, on the 2d day of September, 1862. Comp. Laws 1862, 866, § 36. Sec. 70 of said act *does* authorize the county treasurer to sell on the first Tuesday in September, but it is only in cases where he has "*unavoidably* omitted or failed" to sell on the first Tuesday in May; and in the event the sale is made in September, the deed ought to recite the fact that he so "*unavoidably* omitted or failed." The deed contained no such recital. It does not follow the statutory form in this respect. (Sec. 10, p. 877, Comp. Laws.) On the contrary, it recites the fact that the sale was "*begun* and publicly held on the 2d day of September, 1862," thus distinctly negativing any presumption that might otherwise arise, that this was an adjourned sale. The sale must take place at the precise time prescribed by law, otherwise it will be void. Blackw. on Tax Titles, Balche's ed., 265; 4 Peters, 349; 4 Yerger, 307; 21 Ill., 139; 14 id., 254; 15 id., 130; 11 Howard, 114; 2 Gilman, 119; 10 Ohio, 139; 11 Ohio, 359. And where a sale of land for taxes is not commenced on the day specified in the notice of sale, the land cannot be sold at a subsequent time. 9 Minn., 212.

The deed is only *prima facie* evidence of the "regularity of the proceedings," (§ 10, p. 878, Comp. Laws; § 112, p. 1055, Gen. Stat.,) and creates no presumption in favor of the *power to sell at that time.* If the treasurer of the county was authorized by law to sell this land on the 2d of September 1862,

for the delinquent taxes of 1861, and did sell on that day, then the deed furnishes *prima facie* evidence that the sale was in all respects conducted in the manner required by law; but the treasurer had no power to sell on the 2d of September, except upon the condition that he had so "unavoidably failed or omitted," and hence was authorized to sell at the time recited in the deed. The statutory power of the officer to sell, must be strictly pursued, and the conveyance must bear on its face an acknowledgment of the power.

2. The only disputed question of fact in the case was, as to whether there was a sale of this land in 1862 for the taxes of 1861 or not. The court below found that there was such a sale, and on this finding, and on this alone, rendered judgment for the defendant. This finding and judgment is not sustained by sufficient evidence. In favor of this finding is the *recital* in the deed, which recital the court below must have held to be conclusive evidence of such sale by the operation of the statutes of limitation, and this view was erroneous. The deed, by law, is only *prima facie* evidence of the regularity of the proceedings, and not of the *existence of the fact of sale;* §10, p. 878, Comp. Laws; §112, p. 1055, Gen. Stat.; 3 Denio, 595; 2 N. Y., 66; 13 Iowa, 29; 29 Iowa, 356. The recitals in the deed cannot become conclusive by operation of the statutes of limitation. The statutes of limitation begin to run from the date of the record of the deed, September 19th, 1864. But if there was no sale in fact, the tax deed is void; "it can neither create title nor draw to its holder the constructive possession of the property." *Taylor v. Miles,* 5 Kas., 498. At the time of the commencement of this action, the land was unoccupied.

The *onus* of proving a negative, to wit, that the land was not sold in 1862 for the taxes of 1861, was on the plaintiff in error; and admitting for the time that the tax deed was *prima facie* evidence of the *fact* of sale at the time recited, I call the attention of the court to the evidence produced by plaintiff in error, and the admitted fact in this case, that the land in question is not embraced in the list of the sales of the 2d of

September, 1862. The recitals in the sales-books are the best evidence that can be produced that there was a sale, or that there was not a sale; 29 Iowa, 374; 6 Monroe, 206; 7 id., 268. The entries in the county treasurer's books are made *prima facie* evidence in all judicial proceedings. Sec. 66, p. 873, Comp. Laws; § 372, p. 700, Gen. Stat. The duplicate sales-book for 1859 shows that this land was sold in 1859 for the delinquent taxes of 1858, and the taxes for 1861 upon the land were charged up against it under the sale made in 1859, in accordance with § 48, p. 868, Comp. Laws. This is an admitted fact in the case. Now, admitting the deed to be *prima facie* evidence of the sale in 1862, are not these two items of evidence sufficient, and more than sufficient? Are they not conclusive of the fact that no sale occurred in 1862? There is an absence in the entry of the sales-book of 1862, of the sale of this land at that time. There is an entry in the sales-book of 1859, charging up in strict accordance with law the taxes of 1861 against this land, and by this means making the taxes of 1861 an additional lien on the land. This must overcome the presumption arising from the recital of the deed. It does not require very strong proof to overcome the presumption of the deed : 40 Ill., 307 ; 16 Mich., 12.

3. But another question arises. It is an admitted fact in this case that this land was sold in 1859 for the taxes of 1858, and that the subsequent taxes of 1861 were charged against it under the sale in 1859, and that it was not redeemed from that sale. The paper offered in evidence by the plaintiff in error being "invalid for the purpose of showing the fact of redemption," (*Shelton v. Dunn*, 6 Kas., 128,) and there being no proof that the land had been sold by the county, or that the tax certificate had been assigned, the county treasurer was not authorized by law to again sell, but on the contrary § 48, p. 868, Comp. Laws, expressly provides that the land shall not be again sold; so, if in fact there was a sale in 1862, that sale was without authority of law, and void for every purpose. The court below seemed to think it was immaterial whether there was a sale or not, or whether the sale was

authorized by law or not. But it is submitted that a sale is essential, and jurisdictional; that without a sale, the deed is void. "A tax deed with a *prima facie* presumption of validity in its favor, is no better, when proved to be void, than a tax deed that has no such presumption in its favor." *Taylor v. Miles*, supra. That a sale is absolutely necessary, that it is essential and jurisdictional, see 29 Iowa, 356, and 22 Iowa, 246.

*Royse & Baker*, for defendant in error:

1. There was no error in admitting the tax deed in evidence. The only objection made by the plaintiff to said deed was that it was "void on its face, for the reason that the land was not sold in 1862 for the taxes of 1861." No other objection was pointed out to the court below, and no other was passed upon by that court. Such being the fact, this court will not consider any other defect in said deed, though appearing on its face, for the plaintiff is presumed to have waived all objections and defects he has chosen to pass over, and neglected to point out to the court below.

2. But if the question is properly raised for the decision of this court, we contend that the proposition is not true, but on the contrary the county treasurer *was* authorized to sell the said land at the time recited in the deed, viz., the 2d of September, 1862. The law in force at the time of this sale very clearly *did* authorize a sale on the first Tuesday of September, which in the year 1862 was the 2d day of the month. Comp. Laws, § 70; McCahon's R., 212. A sale was authorized on the first Tuesday of May, and also on the first Tuesday of September following. The latter is *not* an adjourned sale, for the time is fixed by law, and not by the treasurer, and a new and separate advertisement is required, which would not be the case if it was an *adjourned* sale. Suppose the authority to sell any particular tract on the first Tuesday of September, instead of the first Tuesday of May, does depend upon the unavoidable omission or failure to sell in May, that is a fact *in pais*, a certain fact that by law is not required to be made

a matter of record; (§ 70, p. 873, Comp. Laws;) and this sale on the first Tuesday of September being a regular sale, fixed as to time by law, the court will presume that the conditions authorizing the sale existed—the presumption, in the absence of evidence to the contrary, being, that the treasurer did his duty. 2 Ohio St., 241; 4 id., 112; 5 Blackf., 390; 1 Greenl. Ev., § 40. The tax deed reciting that the treasurer sold the land in controversy on the 2d of September 1862, (which was the first Tuesday,) the court will presume that the treasurer did "unavoidably omit or fail" to sell this land on the first Tuesday in May. And it is not necessary that the tax deed in pursuance of a sale in September *should* recite that the treasurer "unavoidably omitted or failed" to sell in May. The statutory form for tax deeds (Comp. Laws 1862, p. 878, § 10) does not require such a recital. An examination of the statutory form will show that there is no provision for the insertion of such a recital, and this form is clearly intended by the legislature to be used in the conveyance of lands sold on the first Tuesday of September, as well as of lands sold on the first Tuesday of May, as appears in the following clause in the form, to-wit: "The sale begun and publicly held on the first Tuesday of ——— A.D. 18—," leaving the month blank for the insertion of either May or September, according to the fact, yet inserting the day of the week, because the sale was required to be on the "first Tuesday," whether in May or September. And yet no provision is made in this statutory form for the insertion of a clause to the effect that the "treasurer unavoidably omitted or failed to sell in May." The tax deed in this case follows the form required by the statute, which is certainly a sufficient recital of the power; § 10, p. 878, Comp. Laws; 6 Kas., 311; 7 Wis., 388; 3 Barb. Ch., 528. But if the treasurer did *not* "unavoidably omit or fail" to sell this land in May (which was not attempted to be shown) the delinquent tax-payer would be benefited instead of injured by the delay. He would have four months longer in which to pay his taxes; and he cannot now be allowed to come in and say that the delay which

favored him only, and could not possibly affect him injuri-
ously, shall invalidate the tax sale and render the deed a
nullity. To have such effect some substantial error affecting
injuriously the owner of the land must be shown; 16 Mich.,
12, 38; 6 Kas., 311. The neglect or omission of any officer
to perform his duty at the time required by law cannot
invalidate the tax deed. Comp. Laws 1862, p. 879, § 10;
Gen. Stat., p. 1057, § 113.

3. The second assignment of error relied on by plaintiff in
error is "That the judgment of the court is not sustained by
sufficient evidence." If the tax deed is not *absolutely void*,
the statute of limitations having run, there is sufficient evi-
dence to sustain the finding and judgment of the court. But
the tax deed was "*prima facie* evidence of *everything* necessary
to its own validity, and *prima facie* evidence of title in the
defendant in error." 6 Kas., 311. And so it was *prima
facie* evidence that the treasurer sold the land in controversy
on the 2d of September 1862 for the taxes of 1861. And
the statute having run, the tax deed is conclusive evidence of
*everything* necessary to its own validity, except jurisdictional
facts, and such as the law expressly excepts from its opera-
tion, viz., that the taxes have been paid, or the land redeemed.
6 Kas., 311; 13 Wis., 254; 2 Black, 599; Comp. L. 1862,
p. 879, § 11; Laws 1866, p. 284, § 90; Gen. Stat., p. 1057,
§ 116; id., p. 633, § 16.

The finding of fact by the court stands as the verdict of a
jury, and will not be disturbed by this court if there is *any*
evidence to support it. 4 Kas., 206; 1 Kas., 493; 14 Ohio,
586. To overthrow the presumptions of the tax deed in
support of the finding of the court, plaintiff in error relies on
the testimony of the treasurer, who testified (over the objec-
tion of defendant) that "the tax-sale books do not show a
sale of this tract of land on the 2d of September 1862 for the
taxes of 1861, and that said books do show a sale of the land
in 1859 for the taxes of 1858." He *did not* introduce the
books in evidence, nor was any admission of their contents
made on the trial below. The admissions contained in the

"case made," are only admissions of the contents of the books that were "produced in court by the treasurer." The testimony of the treasurer as to the contents of the sales-books was incompetent, being secondary evidence, and should not have been admitted.

It is claimed by plaintiff in error, that as it is admitted that this land is contained in the list of lands sold in 1859 for taxes of 1858, and there being no legal evidence of a redemption from that sale, the law required the taxes of 1861 to be carried back to the sale for 1858. But this land was not subject to taxation in 1858, as it was not conveyed by the U. S. to the grantor of the plaintiff till the first day of October of that year, so there could not have been a *valid* sale of this land for taxes of 1859, for there could be no taxes due upon it at that time; 5 Kas., 498; and there was no sale to charge the taxes of 1861 back to. The fact that the sale-books of lands sold in 1862 for taxes of 1861, do not *show* that this land was sold at that time, does not *prove* that the land was not in fact sold at the time recited in the deed. Although the absence of a record in the place where the law requires a record to be kept may raise the presumption that no record was ever made, yet it does not raise the further presumption that there was no sale—that the fact never existed from which the record could be made; 23 Iowa, 417. And in order that the sale of the land for the taxes of 1858 could affect the validity of the sale in 1862, it should have been affirmatively shown that the sale-certificate for the sale of 1858 was still held by the county at the time of the sale in 1862, which was not proven in this case.

The opinion of the court was delivered by

BREWER, J.: This case hinges on the validity of a tax title. Plaintiff in error claims that the tax deed was void on its face, or, if not, was shown to be void by the other testimony in the case. Was the deed void on its face? The only reason assigned on the trial was, that the "land was not sold in September 1862, for non-payment of the taxes of 1861." This reason is not pressed in this court, but a new

one is urged, one not presented to the district court. We might perhaps upon settled rules decline considering either. The reason given below is not borne out by the language of the deed, and that is all that is open to examination on this objection. The reason given here, is, that the deed recites the sale as made at "the sale begun and publicly held on the 2d day of September," without reciting that the county treasurer unavoidably omitted or failed to sell on the first Tuesday of May. That the power to sell on the 2d day

**1. Tax deed; what recital not necessary.** (that being the first Tuesday) of September depended on the fact of an unavoidable omission or failure to sell in May, may be conceded. (Comp. Laws, 873, §70.) But it does not follow therefrom that the validity of the deed depends upon the recital of the fact, or that an omission to recite is evidence of its non-existence. In cases where no record or written evidence is required to be preserved, an official act, which can be rightfully done only after some precedent act by the same officer, is itself presumptive evidence of the performance of such precedent act. The fact that the treasurer sold in September, is sufficient, in the absence of anything to the contrary, to show that he unavoidably omitted or failed to sell in May. *Lessee of Ward v. Barrow*, 2 Ohio St., 241; *Lessee of Combs v. Lane*, 4 Ohio St., 112. The sale in September is not an adjourned sale. It is an independent, complete proceeding, with advertisement, and other requirements, like to those of the May sale. (See section just cited.) Nowhere is the treasurer required to make or preserve a record of the causes of the failure to sell in May; and surely a failure to sell in May is a matter of which the owner of the land has little cause to complain, for without adding to the burden it increases the time within which he can redeem. But again, the form prescribed in the statute (Comp. Laws, 877, §10,) which is a form for sales made in September as well as those in May, contains no such recital, so far as this point is concerned. The deed is almost

**2. Tax deed, form of; statute.** a literal copy of the form. The rule is clear, that where the statute contains a form of any instrument a compliance with that form is sufficient. A sim-

ilar question arose in *Falkner v. Dorman*, 7 Wis., 388. In deciding that case the court uses this language: "It was insisted that the deed was not admissible in evidence because it did not show on its face that it was executed under and in pursuance of the special power given by the statute. But upon comparing the deed with the form given in § 5 of the act of 1852, we do not see but it substantially complies with the form therein prescribed, and probably is a good and sufficient deed in this respect. For we suppose a deed made in strict conformity to a particular form prescribed by the statute to be observed, in the execution of deeds, must be held valid as far as the form is concerned." The many authorities cited by counsel for plaintiff to the point that "the sale must take place at the precise time prescribed by law, otherwise it will be void," are inapplicable, for there is no question that a sale could be rightfully made in September. The only question is, what proof must there be that this was one of the lots which could be then rightfully sold?

The deed being regular upon its face, did the other testimony show it to be void? Plaintiff claims that the testimony
3. Findings of court.
shows there was in fact no sale made, and that even if one had been attempted, it would have been void, as the land was not subject to sale. The finding of the district court being a general finding, that the allegations of the answer were true, was in effect a finding that a sale had been made. It is seldom that the finding of the district court upon a question of fact will be disturbed in this court. Certainly not where the testimony is anything like
4. Recital of sale is prima facie evidence of sale.
evenly divided. The recital in the deed of a sale is *prima facie* evidence that one was made. See § 10, p. 877, Comp. Laws; *Bowman v. Cockrill*, 6 Kas., 311; *Knox v. Cleveland*, 13 Wis., 245. As against this is the fact that in the sale-book of the lands sold in 1862, for the delinquent taxes of 1861, this land does not appear, and also that on the list of lands sold in 1859 for the delinquent taxes of 1858 this land is entered. Further, in regard to this last sale, and the taxes for subsequent years, it appears

that in the list, and under the head of "Amount of Taxes," there is no entry of amounts of taxes for the years 1858, 1859, and 1860, but there is an entry of the amount of taxes for the year 1861, and that the taxes on said land for the year 1861, amounting to $8.41, were charged up to said land in said tax-sale books for the year 1858.

The entries in the county treasurer's books were *prima facie* evidence of facts therein recited to have been done. Nothing higher than this can be claimed for them as to the fact of a sale. The certificate of sale would be the best evidence. That being wanting, the records of the county treasurer's office would be competent. The authorities cited from Kentucky and Iowa as to the effect of the recitals in the sale-book are not in point, for in those states the certificates are made out and issued from the recitals, while under our statutes the certificates are made out on payment of the bids, and the sale-book, after the close of the sales. As to the comparative weight of the recitals in the sale-book, and those in a deed, or which would prevail in case of conflict, we need not inquire, for here we have a positive recital in the one as against an omission to recite anything in the other. It bears a close analogy to the comparative weight of positive and negative testimony. Thus much in regard to the omission to enter this land in the list of lands sold in 1862. In regard to the recital of a sale in 1859 for the taxes of 1858, laying out of

5. What tax sale is void.

consideration a redemption-receipt signed by the county clerk alone, (as coming within the scope of the decision in *Shelton v. Dunn,* 6 Kas., 128,) the patent offered by the plaintiff is dated Oct. 1st 1858, and there is nothing in it to show when the equitable title passed from government. Under this state of facts the land was not subject to taxation during the year 1858, and the attempted sale in 1859 was void. *Taylor v. Miles,* 5 Kas., 505. Of

6. Void sale will not support subsequent taxes.

course, this sale being void there was no authority to charge up to it subsequent taxes. The attempt to charge up the taxes of 1861 was inoperative to prevent a sale in 1862 for these delinquent taxes. It

is worthy of note that, except as indicated by the county clerk's redemption receipt for the taxes of 1858, above referred to, there is no pretense in the testimony that any taxes were paid on this property. It seems to us therefore that the sale in 1859 was void, that the land thereafter was subject to taxation and sale, and that the weight of the evidence sustains the finding of the district court as to the fact of a sale in 1862. The property was subject to taxation in 1861. The taxes do not appear to have been paid. It ought then to have been sold. The presumption, so far as any exists, would be that the treasurer would do his duty. The tax deed, which is *prima facie* evidence, recites a sale.

We have considered this case purposely without reference to the question of the effect of, the limitation law upon it. The tax deed was recorded Sept. 19th, 1864, and this suit was commenced March 26th, 1871. Independently of the question whether or no the action is barred, we think the judgment of the district court should be affirmed.

All the Justices concurring.