McMillan and others vs. Wehle and another.

McMILLAN and others vs. WEHLE and another.

*October 14 — October 31, 1882.*

*(1, 2) Adverse possession under tax deed void on its face: When recovery barred. (3, 4) Construction of uncertain description in deed: Extrinsic evidence.*

1. A tax deed, though void upon its face, is such a written instrument as is contemplated by sec. 6, ch. 138, R. S. 1858 (R. S. 1878, sec. 4211), which provides that "whenever it shall appear that the occupant, or those under whom he claims, entered into possession of any premises under claim of title, exclusive of any other right, founding such claim upon some *written instrument as being a conveyance* of the premises, . . . and that there has been a continual occupation and possession of the premises . . . under such claim for ten years, the premises . . . shall be deemed to have been held adversely."

2. To make the limitation of three years prescribed in sec. 123, ch. 15, R. S. 1849, available to persons claiming title under a void tax deed, actual and adverse possession of the land must have been taken and held during the three years next after the recording of the tax deed; but an adverse possession for a period of ten years, under such a deed, *is a bar to any action for the recovery of the land*, notwithstanding such possession did not commence until after the expiration of the three years from the recording of the deed.

3. A deed with a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of its execution, and extrinsic evidence of that state is admissible to aid in the construction.

4. A description of a lot, as in "Camerons, Dunns & Dousmans addition to the village of La Crosse," is *held* to substantially describe a lot in "C. & F. J. Dunn, H. L. Dousman and Peter Cameron's addition to the town of La Crosse."

APPEAL from the Circuit Court for *La Crosse* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an action of ejectment to recover a lot in La Crosse. The defendants claim title under a deed executed by the original owner in December, 1878. The plaintiffs claim title by virtue of ten years' possession, commencing in April, 1860, under a tax deed void on its face, issued to Alexander and John McMillan, and recorded August 6, 1856. Prior to April, 1860, the lot was vacant, unfenced, and unoccupied. Alexander and John McMillan took possession under the tax deed in April, 1860, and built a fence across the front and also across the rear of the lot, which, with the fences each side of the lot previously built by the owners of the adjoining lots respectively, completely inclosed the lot in question. The lot was plowed and cropped by the McMillans during the year 1860, and they continued to so occupy and cultivate the same until they leased it to one Tuttle, who went into possession of the lot under them, and agreed to pay them $18 a year rent and the taxes, and thereupon moved a house on to the lot and occupied the same as a residence until about 1876 or 1877. The court directed a verdict for the plaintiffs, and from the judgment entered thereon this appeal is brought."

[The premises were described in the complaint as lot number four in block number eleven "of Dunn, Dousman & Cameron's addition to the village (now city) of La Crosse." The description in the tax deed was as follows: "Lot four in block eleven in Camerons, Dunns & Dousmans addition to

the village of La Crosse." It appeared that the correct name of the plat, according to the record, was "C. & F. J. Dunn, H. L. Dousman and Peter Cameron's addition to the town of La Crosse."]

For the appellants there was a brief signed by *Fruit & Brindley*, *M. P. Wing* and *G. C. Prentiss*, and oral argument by *Mr. Fruit* and *Mr. Wing:*

1. The plaintiffs' rights are restricted to and governed by the statute in force at the time they attempted to take a tax deed of the premises. That statute provided that any suit or proceeding for the recovery of lands sold for taxes, except in cases where the taxes have been paid, or the lands redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed of sale, and not thereafter. Sec. 123, ch. 15, R. S. 1849; *Edgerton v. Bird*, 6 Wis., 527, and cases cited in note; *Knox v. Cleveland*, 13 id., 245; *Lawrence v. Kenney*, 32 id., 281; *Lain v. Shepardson*, 18 id., 59; *Hazeltine v. Mosher*, 51 id., 443; *Smith v. Ford*, 48 id., 161. This is a suit to recover lands which have once, at least, been sold for taxes. What difference does it make in the facts, when plaintiffs say they do not offer it as a tax deed, but to prove title under it by possession? It nevertheless had its origin in a tax sale, and they are claimants under a tax deed void on its face. If the deed were valid it gave them an absolute title, and if the land was unoccupied no suit was necessary, as the deed drew after it constructive possession. *Lawrence v. Kenney*, 32 Wis., 281; *Austin v. Holt*, id., 478; *The Oconto Co. v. Jerrard*, 46 id., 317. Being void on its face it was necessary that possession should be taken within the three years, otherwise the title and constructive possession remained in the original owner. *Cutler v. Hurlbut*, 29 Wis., 152; *Lindsay v. Fay*, 25 id., 460. The limitation for the recovery of lands sold for taxes is a special one, applicable only to suits or proceedings based on a tax deed. It does not seem reasonable that when this special limitation has run, and the tax-

title claimant is barred by it, he may then come in and
claim under the general statute. *Woodbury v. Shackleford,*
19 Wis., 55. The statute of limitation applicable to lands
sold for taxes being in force prior to the passage of the gen-
eral limitation of ten years, it may be fairly presumed that
the legislature never intended the latter statute to bolster
up the tax-title claimant, who has failed by his own laches
to perfect his title by taking possession within three years.
One who takes a tax deed must do so subject to the condi-
tions regulated by law, upon compliance with which his
title may become perfect. *Woodman v. Clapp,* 21 Wis.,
350; *Nelson v. Rountree,* 23 id., 367; *Smith v. Cleveland,*
17 id., 556. 2. To the point that a tax deed, void on its
face, does not give color of title, counsel cited: *Moore
v. Brown,* 11 How., 414; *Walker v. Turner,* 9 Wheat.,
541; *Shoat v. Walker,* 6 Kans., 73; *Nichols v. McGlath-
ery,* 43 Iowa, 189; *Taylor v. Miles,* 5 Kans., 498; *Wal-
lingford v. Fiske,* 24 Me., 389; *Kilpatrick v. Sisneros,* 23
Tex., 114; *Wofford v. McKinna,* id., 36; *Irving v. Brownell,* 11
Ill., 402; *Holloway v. Clark,* 27 id., 484; *Elston v. Kennicott,*
46 id., 196; *Winstanley v. Meacham,* 58 id., 97; *Cain v.
Hunt,* 41 Ind., 466; *Cogel v. Raph,* 24 Minn., 194; Cooley
on Taxation, 382–3; *O'Mulcahy v. Florer,* 27 Minn., 449.
3. The original owner was not put upon his guard, because
of the uncertainty in the description in the tax deed. Prior
to ch. 53, Laws of 1866, it was uniformly held that no in-
tendments were made in favor of the description in tax
deeds. And that act cannot make such void tax deeds as
were given before the passage of the act, valid for any pur-
pose whatever. *Curtiss v. Supervisors,* 22 Wis., 167; *Orton
v. Noonan,* 23 id., 102; *Delorme v. Ferk,* 24 id., 201. See,
also, *Mecklem v. Blake,* 19 id., 397; *Johnson v. Ashland
Lumber Co.,* 52 id., 458.

For the respondents there was a brief by *Cameron, Losey
& Bunn,* and oral argument by *Mr. Bunn:*

1. Under sec. 4211, R. S., it is sufficient that a party enters

into possession of land under claim of title exclusive of any other right, founding such claim on some written instrument. The instrument may be void on its face. If the party founds his possession upon it as a valid instrument and holds exclusive adverse possession for ten years, the possession, not the instrument, gives him title. *North v. Hammer*, 34 Wis., 432; *Edgerton v. Bird*, 6 id., 527; *Sprecher v. Wakeley*, 11 id., 432; *Lindsay v. Fay*, 25 id., 460. It is admitted that all rights under the tax deed as such were barred in three years after it was recorded. But this could do no more than to make the deed null. It still remained as good as any other void deed, as color of title to protect an actual adverse possession of ten years. *Cutler v. Hurlbut*, 29 Wis., 156; *Mecklem v. Blake*, 22 id., 500. 2. The description in the tax deed was sufficient to identify the property so that the adverse possession could be referred to the deed. There was but one addition platted by Dunn, Dousman and Cameron, and no other plat for which the one in question could possibly be mistaken. Were it necessary to go so far, it would be claimed that the description was sufficient even in a tax deed. *Sprecher v. Wakeley*, 11 Wis., 442; *Jenkins v. Scharpf*, 27 id., 475; *Whitney v. Gunderson*, 31 id., 379; Cooley on Taxation, 282.

CASSODAY, J. Notwithstanding the facts stated are undisputed, it is urged that the question of possession should have been submitted to the jury. In support of this we are referred particularly to the testimony of Daniel Cameron, from which it appears in effect that he had, during the time in question, claimed title to the land, and supposed that Tuttle went on to the lot under him, and for some of the years paid the taxes. But the mere conversation between Daniel Cameron and Tuttle could in no way affect the adverse possession then held by the McMillans. They continued to hold until Tuttle went into the possession under them. The bill of exceptions does not show that there was anything said in that

conversation which tended to disprove such adverse possession. Without entering upon any discussion of the evidence we must hold that there was no testimony which would warrant a jury in finding that Daniel Cameron, or any one under him, had actual possession of the lot during any portion of the time between April, 1860, and 1876, and hence the verdict was properly directed, unless counsel is right in urging, (1) that the possession taken under the tax deed, and continued for more than ten years, did not ripen into a title; (2) that the tax deed is void for uncertainty in the description. It is conceded by the plaintiffs that as the lot was vacant and unoccupied, and the deed void upon its face, the constructive possession remained in the original owner until actual possession was taken in April, 1860.

On the part of the defendants, it is claimed that the rights of the plaintiffs are restricted to and governed by sec. 123, ch. 15, R. S. 1849, which provided, that "any suit or proceeding for the recovery of lands sold for taxes, except in cases where the taxes have been paid, or the lands redeemed as provided by law, shall be commenced within three years from the time of recording the tax deed of sale, and not thereafter." See sec. 1187, R. S. To make the limitation prescribed in that section available to the McMillans, or those claiming under them, it was essential that they should have taken actual and adverse possession of the lot, and held the same during the three years next after the recording of the tax deed. *Edgerton v. Bird*, 6 Wis., 527; *Falkner v. Dorman*, 7 Wis., 388; *Sprecher v. Wakeley*, 11 Wis., 433; *Knox v. Cleveland*, 13 Wis., 245; *Parish v. Eager*, 15 Wis., 532; *Lindsay v. Fay*, 25 Wis., 460; *Cutler v. Hurlbut*, 29 Wis., 152. It is conceded that the McMillans were not in such possession during any portion of the three years after the recording of the tax deed, and hence that the three years' limitation is not available to the plaintiffs. The contention is, however, that adverse possession as prescribed in sec. 7, ch. 138,

R. S. 1858 (sec. 4212, R. S.), under such void tax deed, by those claiming title to the lot, founded on such tax deed, exclusive of any other right, and continuing for the period of ten years, ripened into a perfect title under secs. 5, 6, and 10, ch. 138, R. S. 1858 (secs. 4210, 4211, and 4215, R. S.), notwithstanding such possession did not commence until after the expiration of three years from the time of recording the tax deed.   Here the lot was inclosed by a substantial fence, and cultivated and occupied as a residence, and hence there can be no question but what it was held adversely within the meaning of the above section 7 of the statute.   This being so, we are to inquire as to the meaning and applicability of secs. 5, 6, and 10.   Under sec. 5 (sec. 4210, R. S.) occupancy was deemed to have been under and in subordination to the legal title, unless it appeared that such premises had been held and possessed adversely to such legal title for ten years before the commencement of the action.   Sec. 6 (sec. 4211, R. S.), provided that " whenever it shall appear that the occupant, or those under whom he claims, entered into possession of any premises under claim of title, exclusive of any other right, founding such claim upon some written instrument, as being a conveyance of the premises in question,   .   .   .   and that there has been a continual occupation and possession of the premises included in such instrument,   .   .   .   under such claim, for ten years, the premises so included shall be deemed to have been held adversely."   Sec. 10, ch. 138, R. S. 1858 (sec. 4215, R. S.), provided that "an adverse possession of ten years, under the sixth and seventh sections (secs. 4211 and 4212, R. S.),   .   .   .   shall constitute a bar to an action for the recovery of such real estate so held adversely, or of the possession thereof."

It is strenuously urged, however, with much force and ability, that a tax deed, though valid upon its face, upon which the three years' limitation has been allowed to run in favor of the original owner of the land, cannot be deemed

or taken to be a " written instrument, as being a conveyance
of the premises in question," within the meaning of those
sections; and for a much stronger reason a tax deed void
upon its face, and upon which such limitation has run against
the tax-title claimant, cannot be deemed or taken to be such
an instrument.   The argument is that the statutes having
provided special limitations in favor of and against tax-title
claimants, must be deemed to have excluded such claimants
from the benefit of the ten years' limitation.   We are not
aware that the question has ever been determined by this
court, unless it was in *Mecklem v. Blake*, 22 Wis., 500.   It
was there said by Dixon, C. J., that "in fact, the title to one
of the lots (lot 11) became perfect by lapse of time before or
about the time this action was commenced.   It had been oc-
cupied by Blake and his assigns under claim of title exclusive
of any other right, founded on the tax deed to Farwell of
June 7, 1845, for the period of ten years.   This under the
present statute (R. S. 1858, ch. 138, secs. 6 and 10), barred
the title of the original owner."   The learned counsel for the
defendants insist, however, that an examination of the records
in that case discloses the fact that lot 11 was not included in
the tax deed, and hence that Judge Dixon made the remark
upon a mistaken assumption of the fact.   We have not had
access to the record in that case, except the briefs, and they
seem to sustain the position of counsel.   The case, how-
ever, shows the view which the court then took of the con-
struction to be given to the sections of the statute here
involved.

In *North v. Hammer*, 34 Wis., 432, the ten years' statutory
bar was upheld, and the present chief justice, giving the
opinion of the court, used this language:   " Of course, the
rule is that the party in possession must claim the entire
title, to the exclusion of all others, and he must not admit
that he is in possession in subordination to a higher title in
another.   But where this is the character of the claim, it is

*immaterial how defective the paper title may be* upon which the adverse possession is founded." He also quotes approvingly from Chancellor WALWORTH this language: " And the result will be the same where the entry *is under color of a conveyance* from the sheriff, although such conveyance *is not upon its face* sufficient to convey the legal title to the land." Page 433. A tax deed void upon its face, nevertheless gives color of title, and this court has frequently held that such deed is sufficient to set the three years' limitation running in favor of one in actual possession under it. *Edgerton v. Bird,* 6 Wis., 527; *Sprecher v. Wakeley,* 11 Wis., 432; *Lindsay v. Fay,* 25 Wis., 460; *Oconto Co. v. Jerrard,* 46 Wis., 326. Being of sufficient force to set the three years' statute running in favor of one in possession under it, would it be logical to hold that it had not sufficient force to set. the ten years' limitation running in favor of one in adverse possession for that period claiming title thereunder exclusive of any other right? Counsel seem to argue on the theory that the plaintiffs are seeking to recover by virtue of the tax deed merely. Such, however, we do not understand to be the case. On the contrary, recovery is sought by virtue of ten years' adverse possession under claim of title founded upon a written instrument, as being a conveyance of the premises, exclusive of any other right. It is not the instrument which gives the title, but adverse possession under it for the requisite period with claim of title. Because the instrument under which the claim of title is made happens to be a tax deed void upon its face, are we therefore to hold that it is not a " written instrument, as being a conveyance of the premises in question?" To so hold would be contrary to the fact, for it certainly is such an instrument. The deed, being void upon its face, could of itself give no title. Without possession being taken thereunder it was but mere waste paper. It conveyed no title and gave no right to possession. Within itself it was of no less significance after the three years

from the time of recording had expired than it was before. Being of itself a nullity before the expiration of the three years, it could be nothing less thereafter. Whether before or after the running of the three years, it had no significance, except as coupled with actual adverse possession. When so coupled, aside from somewhat enlarging such possession, it had no significance except to shorten the period of limitation. The extent to which the period of limitation was so shortened depended upon the time when such possession was taken under it. If such actual adverse possession had been taken at the time of recording the deed, and then continued, it would have ripened into a title in three years. Since it was not taken until after the expiration of the three years, the three years' limitation could have no application. This being so, its effect, when coupled with such actual adverse possession under claim of title exclusive of any other right, and so continued, could only operate to shorten the period to ten years. The plain object of the statute was to fix a period when such actual adverse possession under claim of title founded upon some written instrument, exclusive of any other right, should ripen into a perfect title so as to bar any and all controversies respecting the same. It was to stop all litigation about the possession, and shut the door to all inquiry about the title. The statutory period having run in favor of the person in such possession under such claim of title, however defective, forever barred the former owner, even though his title were otherwise perfect. Such possession for such period under such claim furnishes a conclusive presumption of title in such possessor, even as against one who would otherwise be, in law the true owner. It is a statute of repose, giving perfect security to the possessor, and terminating all inquiry on the part of any who might otherwise question his title or disturb the possession.

Of course such possession, under such deed for the statutory period, only ripened into perfect title as to the land

described in it. But we think the lot in question was substantially described in the deed. *McEvoy v. Loyd*, 31 Wis., 142. If it was uncertain upon its face it was made certain by the other evidence in the case. Such evidence was admissible. It has often been held that a deed with a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of its execution, and extrinsic evidence of that state is admissible to aid in the construction. *Whitney v. Robinson*, 53 Wis., 309; *Messer v. Oestreich*, 52 Wis., 684.

*By the Court.*— The judgment of the circuit court is affirmed.